NAVEGAR, INCORPORATED, d/b/a Intratec, and Penn Arms, Incorporated, Appellants,

v.

UNITED STATES of America, Appellee.

No. 98–5491.

United States Court of Appeals, District of Columbia Circuit.

Filed Jan. 25, 2000.

Before: EDWARDS, Chief Judge, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges.\*

## O R D E R

PER CURIAM.

Appellants' petition for rehearing en banc and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the petition. Upon consideration of the foregoing, it is

**ORDERED** by the Court that appellants' petition is denied.

---

\* Circuit Judge SENTELLE would grant the petition for rehearing en banc. His opinion is attached.

SENTELLE, Circuit Judge, dissenting from the denial of petition for rehearing *en banc*:

By denying *en banc* review of the panel opinion, *Navegar, Inc. v. United States*, 192 F.3d 1050 (D.C.Cir.1999), this court perpetuates an approach to Commerce Clause jurisprudence hopelessly out of date under contemporary Supreme Court interpretations of the Constitution.

In *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court carefully delineated limitations on the authority of the federal government to act under that enumerated power. In his opinion for the five-Justice majority, Chief Justice Rehnquist identified "three broad categories of activity" within which the federal government may legitimately regulate under the commerce power. 514 U.S. at 558, 115 S.Ct. 1624. These three categories are: (1) "the use of the channels of interstate commerce"; (2) the regulation and protection of "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities having a substantial relation to interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624 (citations omitted). Because the claimed justification for the statute before it, the Gun–Free School Zones Act, sheltered under the umbrella of the third area of activity, the Chief Justice wrote a further explication of "those activities that substantially affect interstate commerce." *Id.* at 559, 115 S.Ct. 1624 (citing *Maryland v. Wirtz*, 392 U.S. 183, 196 n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968)). Briefly, under *Lopez*, to be the subject of constitutionally valid regulation under the Commerce Clause, an activity not falling within categories 1 or 2 must *substantially* affect interstate commerce, not merely affect it. *Id.* at 559, 115 S.Ct. 1624. To determine whether an activity substantially affects commerce, we undertake another tripartite examination, asking whether:

—the regulation controls a commercial activity, or an activity necessary to the regulation of some commercial activity;

—the statute includes a jurisdictional nexus requirement to ensure that each regulated instance of the activity affects interstate commerce; and

—the rationale offered to support the constitutionality of the statute (*i.e.*, statutory findings, legislative history, arguments of counsel, or a reviewing court's own attribution of purposes to the statute being challenged) has a logical stopping point so that the rationale is not so broad as to regulate on a similar basis all human endeavors, especially those traditionally regulated by the states.

*National Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041, 1064 (D.C.Cir.1997) (Sentelle, J., dissenting) (analyzing *Lopez*, 514 U.S. at 559–65, 115 S.Ct. 1624, and citing *United States v. Wall*, 92 F.3d 1444, 1455–56 (6th Cir.1996) (Boggs, J., dissenting in part)).

In *Lopez*, the Court considered the constitutionality of a statute in which Congress had made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(1)(A) (Supp. V 1993). The only justification the United States could offer among the enumerated powers for the constitutionality of the statute was the Commerce Clause. Unsurprisingly, the Court held that the Gun–Free School Zones Act fit none of those three subcategories. First, it did not regulate or control a commercial activity or an activity necessary to the regulation of a commercial activity. The Chief Justice acknowledged that *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), relied on by the panel in *Navegar*, 192 F.3d at 1056–57, had upheld federal regulation of home consumption of wheat, where it affected interstate commerce, but described that decision as "perhaps the most far reaching example of Commerce Clause authority over intrastate activity." *Lopez*, 514 U.S. at 560, 115 S.Ct. 1624. The *Lopez* Court further recognized that at least the statute before the

Court in *Wickard* involved the regulation of the wheat market—interstate commerce. *Id.* at 560–61, 115 S.Ct. 1624. In the view of the Congress, and subsequently the Court of that time, the regulation of consumable wheat, wherever grown, was necessary to control the volume of wheat on that interstate market. The Gun–Free School Zones Act neither controlled nor purported to affect any market at all.

Second, the statute included no jurisdictional nexus. Under this element of examination, the Chief Justice compared *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), in which the Court had upheld the statute making it a crime for a felon "to receive, possess, or transport in commerce or affecting commerce ... any firearm." *Lopez*, 514 U.S. at 561–62, 115 S.Ct. 1624 (quoting *Bass*, 404 U.S. at 337, 92 S.Ct. 515 (brackets omitted)). The Chief Justice noted that in upholding that statute the Court had expressly reserved the question of whether Congress could constitutionally regulate the "mere possession" of firearms without the jurisdictional nexus. *Id.* at 562, 115 S.Ct. 1624 (quoting *Bass*, 404 U.S. at 339 n. 4, 92 S.Ct. 515). Even in *Bass*, where the statute had withstood constitutional scrutiny, the Court set aside the conviction before it because the prosecution, while having proved that the defendant possessed a firearm, "failed 'to show the requisite nexus with interstate commerce.'" *Id.* (quoting *Bass*, 404 U.S. at 347, 92 S.Ct. 515). The statute the Court struck down in *Lopez* had no such jurisdictional requirement. Congress had invaded the state-owned territory of mere possession with no connection to interstate commerce.

Finally, the *Lopez* Court considered the implications of the government's argument that guns around schoolhouses might result in violent crime, and violent crime could be expected to affect the functioning of the national economy either through the mechanism of insurance or by reducing the willingness of individuals to travel to other parts of the country which they might consider unsafe. The Court highlighted the government's admission that,

under this "costs of crime" reasoning, the federal government could regulate "not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." *Id.* at 564, 115 S.Ct. 1624. Indeed, the federal government "could regulate any activity that [Congress] found was related to the economic productivity of individual citizens: family law (including marriage, divorce, and child custody), for example." *Id.* In other words, under the government's theory of constitutionality for the Gun–Free School Zones Act, the words of the Commerce Clause were limitless, and Congress had the power to regulate anything at all. There was no stopping point. The statute was unconstitutional.

As appellants argue in petitioning for *en banc* review, the *Navegar* panel's decision in the present case is inconsistent with the Supreme Court's decision in *Lopez*. The *Navegar* panel had before it an appeal from a judgment denying a declaratory judgment declaring unconstitutional section 110102 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, 1996–98 (1994) (codified at 18 U.S.C. §§ 921(a)(30), 922(v) (1994)). The disputed section makes it unlawful to "manufacture, transfer, or possess a semiautomatic assault weapon." 18 U.S.C. § 922(v). In upholding that judgment and the constitutionality of the statute, the panel relied first on the 1942 jurisprudence of *Wickard v. Filburn*, and then on our decision in *Terry v. Reno*, 101 F.3d 1412, 1417 (D.C.Cir.1996), which upheld the constitutionality of a statute protecting an area of commerce, specifically health clinics. *See Navegar*, 192 F.3d at 1056–57. *Reno* is not on point, but even if it were, the Supreme Court and not our precedent controls. Insofar as the Supreme Court's decision in *Wickard* retains any vitality after *Lopez*, it cannot control the ruling on the disputed statute. Despite the panel's pains to align this statute with those in *Reno* and *Wickard*, ultimately the statute

is indistinguishable from that before the Court in *Lopez*. The panel laboriously attempts to fit this gun act into category 3 of the permissible areas of regulation under *Lopez*. To do so, it incorrectly paraphrases the *Lopez* holding. The *Lopez* Court did not, as the panel declares, "conclude[ ] that Congress had no rational basis for finding that gun possession in a school zone had a substantial effect on interstate commerce and declare[ ] the statute unconstitutional." *Navegar*, 192 F.3d at 1055 (citing *Lopez*, 514 U.S. at 567, 115 S.Ct. 1624). Rather, the Court made an independent determination of the effect of the statute on interstate commerce, "ultimately a judicial rather than a legislative question." *Lopez*, 514 U.S. at 557 n. 2, 115 S.Ct. 1624. The Court concluded that gun possession did not have a substantial effect and declared the statute unconstitutional. As one of our sister circuits recognized, *Lopez* "elevated to a majority opinion statements from previous concurring opinions that 'simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so.'" *Brzonkala v. Virginia Polytechnic Institute and State University*, 169 F.3d 820, 855 (4th Cir.1999) (en banc) (quoting *Lopez*, 514 U.S. at 557 n. 2, 115 S.Ct. 1624) (brackets and other citations omitted), *cert. granted sub nom. Brzonkala v. Morrison*, —— U.S. ——, 120 S.Ct. 11, 144 L.Ed.2d 842 (1999).

This statute, like the parallel firearms act stricken as unconstitutional in *Lopez*, regulates, under purported authority drawn from Congress's power to regulate interstate commerce, activity (or inactivity) that is neither commerce nor interstate. The Supreme Court held the Gun–Free School Zones Act unconstitutional in *Lopez*. Our panel decision upholding this statute as constitutional cannot be reconciled with *Lopez*, and we should review it *en banc*.